**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DARRYL MCGEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:09CV1011MLM** |
| | ) | |
| **MICHAEL J. ASTRUE** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of

Michael J. Astrue ("Defendant") denying the applications of Plaintiff Darryl McGee ("Plaintiff") for

Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401

et seq., and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381

et seq. Plaintiff filed a brief in support of the Complaint. Doc. 12. Defendant filed a brief in support

of the Answer. Doc. 19. Plaintiff has filed a Reply. 20. The parties have consented to the jurisdiction

of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 21.

## I.
## PROCEDURAL HISTORY

On September 29, 2006, Plaintiff filed applications for benefits, alleging a disability onset date

of September 20, 2005. Tr. 10. Plaintiff's applications were denied and he requested a hearing before

an administrative law judge ("ALJ"). Tr. 65-66, 68-72. Following a hearing, the ALJ issued a

decision finding that Plaintiff is not disabled through the date of the decision. Tr. 10-19. The Appeals

Council denied Plaintiff's request for review on May 7, 2009. Tr. 1-3. Thus, the decision of the ALJ

stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. §§ 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her RFC. Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir.

2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity (RFC") and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine  whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted).  See also Eichelberger,  390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record,

observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

Residual functional capacity ("RFC") is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750.

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff contended before the ALJ that he is unable to work because of pain from his head to his fingertips, a dropped toe which causes him to trip and fall frequently, a back injury and back pain, and a limitation with standing. Plaintiff testified that he was in automobile accident in September 2002; that he was injured while working a chipper at work in April 2005; and that he fell in August 2005. Tr. 28. The ALJ found that Plaintiff's subjective complaints were not fully credible and that Plaintiff had the RFC to perform sedentary work, with limitations which would not preclude him from performing work existing in significant numbers in the national economy. Tr. 16-18. Plaintiff argues that the decision of the ALJ is not supported by substantial evidence because there is no medical evidence to support the ALJ's RFC assessment; because the ALJ failed to account for Plaintiff's need to lie down or recline when determining his RFC; because the ALJ improperly drew inferences from Plaintiff's Workers' Compensation claim; because the ALJ failed to explain his credibility determination; and because the ALJ erred in finding that Plaintiff failed to follow prescribed treatment, including physical therapy.

## A. Plaintiff's Credibility:

As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment for that of the ALJ. Guillams v. Barnhart, 393 F.3d 798, 801(8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, as also more fully set forth above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not

methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F. 3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered that Plaintiff had foot drop for several years and that, despite this condition, he was able to successfully work with it for many years. The ALJ noted that a person cannot be found disabled while engaging in substantial gainful employment. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148049 (8th Cir. 2001). "Working generally demonstrates an ability to perform a substantial gainful activity." Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) (citing Nabor v. Shalala, 22 F.3d 186, 188-89 (8th Cir. 1994)). 20 C.F.R. § 404.1574(a) provides that if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity. Moreover, when a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has been a significant deterioration in that impairment during

the relevant period.  See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990).  Further, working after

the onset of an impairment is evidence of an ability to work.  Goff v. Barnhart, 421 F.3d, 793 (8th

Cir. 2005); Goswell v. Apfel, 242 F.3d 793, 798 (8th Cir. 2001).  Section 404.1574(a)(1) further

states that work which a claimant is forced to stop or reduce below the substantial gainful activity

level after a short time because of his impairment is generally considered an unsuccessful work

attempt.  As such, the court finds that the ALJ properly considered that Plaintiff worked while he had

left foot drop and that the ALJ's decision in this regard is supported by substantial evidence.

Second, the ALJ considered that no doctor ever opined that Plaintiff is disabled or that he

cannot work due to his cervical pain. The record does not reflect that any physician noted the

restrictions which Plaintiff contends he has.  Moreover, no doctor opined that Plaintiff is incapable

of lifting ten pounds, standing or walking two hours, or sitting six hours, as the ALJ found Plaintiff

capable of doing.  It is proper for an ALJ to consider that no doctors who treated a claimant imposed

the restrictions which a claimant suggests he has. See Vanderboom v. Barnhart, 421 F.3d 745, 750

(8th Cir. 2005).  The court finds that the ALJ's decision in this regard is supported by substantial

evidence.

Third, the ALJ considered the inconsistencies between Plaintiff's subjective complaints and

the medical evidence.  Indeed, the record reflects that Plaintiff  underwent cervical micro anterior

cervical discectomy on December 19, 2002. Tr. 184.  After the surgery, Plaintiff reported that his arm

pain had "significantly reduced." Tr. 257.  Plaintiff followed up with Gregory J. Bailey, M.D., after

his surgery. Tr. 244-26.   Dr. Bailey released Plaintiff to return to work on February 19, 2003, with

light duty with no pushing/pulling greater than thirty pounds and to full duty on March 19, 2003. Tr.

256.  Dr. Bailey reported on March 21, 2003, that Plaintiff should avoid jarring his neck. Tr. 244.

Plaintiff injured himself on April 29, 2003. Tr. 223. Medical records of May 3, 2003, reflect that Plaintiff freely moved both upper extremities and both lower extremities; that he had normal gait and station; that he had a right rotation of 70 degrees in the cervical spine, both left and right; that he flexed and extended without complaint; that his reflexes were intact and symmetrical in the upper extremities bilaterally; that there was no frank spasm; that his grips were strong bilaterally; and that he was able to tandem walk without any hesitation or difficulty. Tr. 226.

A May 9, 2005 cervical spine x-ray showed degenerative changes at C6-7 and mild bilateral C3 stenosis. Tr. 225. Records of May 16, 2005 reflect that it was recommended that Plaintiff return to "full duty." Tr. 224. Medical records of May 23, 2005, reflect that Plaintiff said he was working "the chipper"; that he was working regular duty; that the numbness and tingling in his ring and little fingers in both hands was reduced significantly; that his grips were strong bilaterally; that he had no "frank spasm" in the cervical spine; that his reflexes were intact in the upper extremities; and that his sensation to light touch was intact. Tr. 223.

Plaintiff alleged in August 2005 that he slipped at work and injured himself again. Tr. 328, 340. The ALJ considered the September 15, 2005 report of Michael C. Treisman, M.D., which stated that Plaintiff said he had neck pain; that he had "some chronic pain" since his surgery over two years prior; that he wore a brace; and that he was falling and was concerned that this may exacerbate his neck problems. Dr. Treisman reported on this date that Plaintiff inquired about disability, and that he felt he could "not cope with neck issues doing his current job." Tr. 233.

Dr. Treisman referred Plaintiff to a neurosurgeon, Daniel G. Sohn, M.D. Tr. 233. The ALJ considered Dr. Sohn's report of September 27, 2005, in which Dr. Sohn stated that Plaintiff reported having neck pain, finger numbness, and headaches and that Plaintiff had "a left AFO that he was not wearing." Tr. 288. In particular, the ALJ considered that Dr. Sohn reported that Plaintiff's gait, and

position changes were normal; that Plaintiff was well developed and appeared healthy, although overweight; that his head and neck appeared normal; that his neck range of motion was poor to fair; that his upper extremity strength appeared intact; and that his lower extremity strength was intact "except for left foot drop." Tr. 13. The ALJ considered the report of an October 3, 2005 MRI ordered by Dr. Sohn and that the MRI showed that Plaintiff's prior anterior fusion C4 through C6 "appeared to be solid"; that there was focal myelomalacic change and atrophy within the cord at C5-6 posteriorly; that there was minimal degenerative spondylosis at C3-4; and that there was no protrusion, canal, or neural foraminal stenosis. Tr. 13. The ALJ considered Dr. Sohn's October 5, 2005 report, including its statement that Plaintiff had no significant adjacent segment disease and that Plaintiff did not have significant reproducible headaches with neck range of motion or palpation. Tr. 13. The court notes that in his October 5, 2005 report, Dr. Sohn stated that the recent MRI showed that there were *mild* myelomalacia changes and atrophy in the spinal cord at C5-6 level; that Plaintiff's head and neck appeared normal; that his neck range of motion was limited on the right; that he had fair left rotation; and that Dr. Sohn's impression included left foot drop and elevated reflexes in the upper and lower extremities including left ankle clonus. Tr. 289. The ALJ next considered that in November 2005 Plaintiff was prescribed physical therapy by Paul H. Young, M.D., of the Microsurgery and Brain Research Institute, P.C. Tr. 13. The court notes that Dr. Young's diagnosis was cervicalgia and the treatment plan included exercise and body strengthening, by performing theraband exercises and using a Swiss ball. Tr. 240.

The ALJ also considered the records of Adam LaBore, M.D., an orthopedic surgeon, including this doctor's recommendation that Plaintiff have a course of physical therapy. Tr. 13. Medical records reflect that Plaintiff saw Dr. LaBore on November 29, 2005, on which date Dr. LaBore reported that Plaintiff's reflexes were diminished in the upper extremities; that his strength

in the right upper extremity was 5/5, "except for elbow flexors, extensors and wrist extensors, which [were] 4/5"; that Plaintiff's lower extremity strength was normal except for left foot drop and extensor hallucis longus weakness; that Dr. LaBore's impression included axial neck pain; and that Dr. LaBore recommended physical therapy, medication, and a urological evaluation. Tr. 310.

The ALJ considered, in detail, the December 12, 2006 consultive report of Raymond Leung, M.D., including Dr. Leung's finding that Plaintiff could walk fifty feet unassisted; that he could squat; and that he had reduced range of motion in the neck and knees. Dr. Leung additionally reported that Plaintiff had rather severe LT foot drop; that he walked with a mild limp; that he was able to squat two thirds of the way down; that his neck and back were non-tender; that he could get on and off the examination table without difficulty; that Plaintiff's speech, hearing, and understanding were within normal limits; that Plaintiff was in no apparent distress; that Plaintiff's arm, leg, and grip strength were 4/5; and that Plaintiff had no muscle atrophy. Tr. 329-30.

The ALJ considered the January 5, 2007 report of Thomas F. Musich, M.D., including that Dr. Musich reported that there were no new findings and that Plaintiff's complaints were work-related. Tr. 14. Dr. Musich conducted a consultive examination of Plaintiff regarding Plaintiff's two work related traumas during the course of his employment by the City of Hazelwood between April 29, 2005, and August 26, 2003. In particular, Dr. Musich reported that Plaintiff's symptoms had not changed since 2003 and that physical examination showed no focal atrophy in either upper extremity and that deep tendon reflexes were present and symmetrical in both upper extremities. Dr. Musich opined that Plaintiff's work trauma of April 2005 was a substantial factor in the development of Plaintiff's neck pain; that his August 2005 injury was a the prevailing factor in the development of Plaintiff's increased neck pain and headaches; that Plaintiff had a permanent partial disability totaling 65% referable to the cervical spine; that Plaintiff had a pre-existing disability of 45% referable to

cervical pathology from a motor vehicle accident in 2002; that Plaintiff should continue to participate in a home exercise program; and that Plaintiff's symptoms would continue to produce a chronic hindrance in his routine activities of daily living. Tr. 340-44.

The records also reflects that Plaintiff was seen at ConnectCare in January, March, May, June, August, and November 2007 and March 2008. The handwritten notes from these visits are generally not legible. ConnectCare records of August 31, 2007, reflect that Plaintiff's fine finger movements were good; that he had no drift and normal tone; that his heel-knee-shin coordination was normal; that he had fluent speech, followed commands, and had good repetition; and that his visual fields were full. Tr. 362. ConnectCare records of March 2008 reflect that Plaintiff was seen for neck pain and that he had been "unable to get medication" due to financial difficulty. Tr. 353-54. The ALJ also considered Plaintiff's October 12, 2007 cervical CT scan which showed, among other things, *mild* disc bulge at C3-4 with *mild* stenosis, *mild* stenosis at 4 to C6, and *mild* disc bulge at C6-7. Tr. 14, 402. The ALJ finally considered Plaintiff's October 17, 2007 EMG, which showed, among other things, *mild* abnormalities. Tr. 14. The record reflects that Plaintiff underwent the October 17, 2007 EMG at Washington University School of Medicine, and that this EMG also showed "evidence consistent with left peroneal neuropathy and the fibular head"; that the mild abnormalities were "in two non-peroneal L5 innervated muscles considered to be non-specific; and that there was evidence of chronic right C6-7 radiculpathy." Tr. 398-99.

Indeed, "an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002) (citing 20 C.F.R. § § 416.908, 416.929). See also Orrick v. Sullivan, 966 F.2d 368, 372 (8th Cir. 1992) (holding that an ALJ may discredit a claimant's subjective complaints where there are inconsistencies in the record; the ALJ may give more weight

to the medical records than to a claimant's testimony); Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991); Edwards v. Sec'y of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987). Only after the ALJ considered Plaintiff's medical records, in great detail, did he conclude that they do not support his subjective complaints. The court finds that the ALJ's finding regarding the medical evidence is based on substantial evidence and that it is consistent with the case law and Regulations. See Davidson v. Astrue, 501 F.3d 987, 991 (8th Cir. 2007) (holding that an ALJ can discount opinion evidence based on "an appropriate finding of inconsistency with other evidence"). Fourth, the ALJ considered that no surgery or other invasive procedure had been recommended to alleviate Plaintiff's pain. Indeed, Plaintiff had surgery in 2002, but the record does not reflect that surgery was subsequently recommended. Additionally, Plaintiff sought no treatment for symptoms in 2006. Seeking limited medical treatment is inconsistent with claims of disabling pain. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits."); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). The court finds that substantial evidence on the record supports the ALJ finding regarding Plaintiff's lack of surgery and that his decision in this regard is consistent with the case law and Regulations.

Fifth, the ALJ considered that Plaintiff was not fully compliant with treatment recommendations and that when prescribed physical therapy, Plaintiff did not follow doctor's orders in this regard. See Eichelberger, 390 F.3d at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments and that no physician imposed any work-

related restrictions on her) (citing <u>Brown v. Chater</u>, 87 F.3d 963, 965 (8th Cir. 1996) (holding that a claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain. The court notes also that Plaintiff reported that he could not afford certain medications. The record does not reflect, however, that he sought and/or was refused assistance in paying for physical therapy or medication. <u>See</u> <u>Riggins v. Apfel</u>, 177 F.3d 689, 693 (8th Cir. 1999) (holding that, despite a plaintiff's argument that he was unable to afford prescription pain medication, an ALJ may discredit complaints of disabling pain where there is no evidence that the claimant sought treatment available to indigents). To the extent that Plaintiff contends that ALJ did not establish that had Plaintiff undergone physical therapy he would have been able to return to work, the court notes that Plaintiff's failure to follow prescribed treatment in this regard was just one factor considered by the ALJ upon his discrediting Plaintiff. Moreover, the ALJ found that even though Plaintiff did not follow doctor's recommendations in regard to physical therapy, he was nonetheless still able to engage in substantial gainful employment. As such, the court finds that the ALJ properly considered Plaintiff's noncompliance and that the ALJ's decision is supported by substantial evidence in this regard.

Sixth, the ALJ considered inconsistencies in Plaintiff's testimony, including that he lives in the basement of his house where there is no bathroom; that he uses the bathroom upstairs; that he goes up the stairs for meals and family activities; and that, therefore, he is not as limited as he claims. The ALJ also considered that Plaintiff's demeanor was "somewhat evasive." While an ALJ cannot accept or reject subjective complaints *solely* on the basis of personal observations, <u>Ward v. Heckler</u>, 786 F.2d 844, 847-48 (8th Cir. 1986), an ALJ's observations of a claimant's appearance and demeanor during the hearing is a consideration. <u>Steed v. Astrue</u>, 524 F.3d 872, 876 (8th Cir. 2008) (holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during

his testimony); <u>Johnson v. Apfel</u>, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations"); <u>Jones v. Callahan</u>,122 F.3d 1148, 1151 (8th Cir. 1997) ("When an individual's subjective complaints of pain are not fully supported by the medical evidence in the record, the ALJ may not, based solely on his personal observations, reject the complaints as incredible."). Here, to reach his conclusion, the ALJ combined his review of the record as a whole with his personal observations. The court finds that the ALJ properly considered Plaintiff's demeanor and that his consideration of inconsistencies in the record is supported by substantial evidence. The court further finds that, in this regard, the ALJ's decision is consistent with the case law and Regulations.

Seventh, the ALJ considered that Plaintiff appeared motivated to qualify for disability benefits. Upon reaching this conclusion, the ALJ considered that Plaintiff had "at least one workers compensation claim, and may have another pending"; that he asked Dr. Treisman about disability in September 2005; that "Dr. Treisman did not even address the question"; and that "were [Plaintiff] disabled, it would reasonably be expected that Dr. Treisman would have stated such at that point." Tr. 17. Plaintiff contends that the ALJ should not have relied upon his workers' compensation claims. The Eighth Circuit has held that an ALJ may discount a claimant's subjective complaints for, among other reasons, that he appeared to be motivated to qualify for disability benefits. <u>Eichelberger</u>, 390 F.3d at 590 (holding that although the ALJ found that the claimant had objectively determinable impairments, the ALJ properly considered that the claimant's incentive to work might be inhibited by her long-term disability check of $1,700 per month); <u>Gaddis v. Chater</u>, 76 F.3d 893, 896 (8th Cir. 1996) (holding that the ALJ to judge properly considered a strong element of secondary gain upon discrediting the claimant). As such, the court finds that the ALJ properly considered Plaintiff's motivation to qualify for benefits based on his applying for and/or receiving workers compensation

benefits and that his decision, in this regard, is supported by substantial evidence and is consistent with the case law and Regulations.

The ALJ articulated good reasons for discrediting Plaintiff's allegations regarding the extent of his limitations. In conclusion, the court finds that the ALJ's credibility determination is supported by substantial evidence on the record as a whole.

## B. Plaintiff's RFC:

Plaintiff contends that the ALJ's finding regarding his RFC is not supported by substantial evidence because the ALJ failed to account for Plaintiff's need to lie down or recline. In particular, Plaintiff contends that the ALJ erred upon making his RFC determination because the RFC which the ALJ assigned to Plaintiff is not consistent with the medical evidence and because the ALJ failed to consider Plaintiff's needs to take a nap more than once during the day and to sit in a recliner.

The ALJ found that Plaintiff has the RFC to perform sedentary work with the limitations of:

lifting and carrying a maximum of 10 pounds, standing/walking 2 hours out of 8, never climbing ropes or crawling, occasionally climbing stairs, ramps, ladders, and scaffold, occasionally kneeling and crouching, occasionally reaching overhead, and must avoid concentrated exposure to hazards of heights.

Tr. 14.

20 C.F.R. § 404.1567(a) defines sedentary work as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Indeed, SSR 85-15, 1985 WL 56857, at *5, states that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. ... If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." The

sitting requirement for the full range of sedentary work "allows for normal breaks, including lunch, at two hour intervals." Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (citing SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996)).  Additionally, the range of sedentary jobs requires a claimant "to be able to walk or stand for approximately two hours out of an eight-hour day. The need to alternate between sitting and standing more frequently than every two hours could significantly erode the occupational base for a full range of unskilled sedentary work." Id. at 997 (citing 1996 WL 374185 at *7).  Moreover, SSR 96-9p requires that "the RFC assessment should include the frequency with which an applicant needs to alternate between sitting and standing, and if the need exists, that vocational expert testimony may be more appropriate than the grids." Id.  It also states that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of disabled." Id.

The Regulations define RFC as "what [the claimant] can still do" despite his or her "physical or mental limitations."  20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001).  "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d, 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d

448, 451 (8th Cir. 2000)).  The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id.  See also Eichelberger, 390 F.3d at 591.

RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  Additionally, "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id.  Moreover, "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain." Id.

"RFC is an issue only at steps 4 and 5 of the sequential evaluation process." Id. at *3.  As stated above, at step 4 the claimant has the burden of persuasion to demonstrate his or her RFC. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).  "If a claimant establishes [his or] her inability to do past relevant work, then the burden of proof shifts to the Commissioner." Goff, 421 F.3d at 790 (citing Eichelberger, 390 F.3d at 591).  In contrast to the first four steps of the sequential evaluation where the claimant carries the burden of proof, the Commissioner has the burden of production at step 5. Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004).  At step 5 "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden

of production shifts to the Commissioner." Goff, 421 F.3d at 790. Also, at step 5, where a claimant's RFC is expressed in terms of exertional categories, it must be determined whether the claimant can do the full range of work at a given exertional level. The claimant must be able to "perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Id. In any case, "[a] disability claimant has the burden to establish her RFC." Eichelberger, 390 F.3d at 591 (citing Masterson, 363 F.3d at 737).

Upon making an RFC assessment, an ALJ must first identify a claimant's functional limitations or restrictions and then assess his or her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). The ALJ in the matter under consideration identified Plaintiff's functional limitations after considering the medical records and after considering Plaintiff's testimony and credibility, as discussed above. Only after doing so did the ALJ find, in regard to Plaintiff's RFC, that Plaintiff can perform sedentary work with specified restrictions.

Upon determining Plaintiff's RFC, the ALJ copiously addressed Plaintiff's medical records prior to determining his RFC, as discussed above in regard to Plaintiff's credibility, including the reports and records of Dr. Treisman, Dr. Sohn, Dr. LaBore, Dr. Leung, and Dr. Musich, as well as CT, x-ray, and MRI reports. See Eichelberger, 390 F.3d at 591; Lauer, 245 F.3d at 704.

Also, consistent with the Regulations, prior to determining Plaintiff's RFC, the ALJ considered Plaintiff's testimony and statements concerning his daily activities, frequency and intensity of his pain, factors that aggravate his symptoms; types of medication Plaintiff takes; and other

20

relevant factors. See SSR 96-7p. The ALJ set forth Plaintiff's testimony in detail and, as discussed above, found him not credible to the extent he alleged disabling pain. Tr. 15-16.

Moreover, the RFC which the ALJ assigned to Plaintiff is consistent with the findings of the agency's medical consultant who reviewed Plaintiff's medical records and statements and found that Plaintiff can lift ten pounds occasionally, stand/walk two hours and sit six hours in an eight-hour workday; that he can occasionally climb, balance, and stoop; that he is limited in his ability to reach in all directions; and that he is restricted in regard to exposure to hazardous machinery and heights. Tr. 337-38. To the extent the ALJ misstated the findings of the agency's medical consultant, any misstatement on the part of the ALJ in this regard did not have an effect on the outcome of Plaintiff's case. An "arguable deficiency in opinion-writing technique" does not require a court to set aside an administrative finding when that deficiency had no bearing on the outcome. See Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Carlson v. Chater, 74 F.3d 869, 871 (8th Cir. 1996); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992). Moreover, the ALJ did not specifically rely on this consultant's opinion or give it controlling weight. Further, the ALJ's determination of Plaintiff's RFC is not precluded by or inconsistent with Dr. Leung's findings that Plaintiff walked with a mild limp; that he had a "rather severe left foot drop"; that he "walked 50 feet unassisted"; that Plaintiff said he could "squat 2/3 of the way down"; that his lumbar flexion was 70 degrees; and that Plaintiff had no difficulty getting on and off the examination table or getting up from a chair.

To the extent that Plaintiff contends that the ALJ failed to consider his need to lie down or recline, as discussed above, the ALJ found Plaintiff's claims not fully credible. The record, moreover, does not reflect that any doctor instructed him to do so or that Plaintiff's laying down or reclining was a medical necessity. See Brunston v. Shalala, 945 F. Supp. 198, 202 (W.D. Mo. 1996) (holding that

the fact that no physician stated that plaintiff needed to lie down during the day indicated that plaintiff was lying down "by choice").

In regard to Plaintiff's contention that the ALJ should have included Plaintiff's alleged need to lie down or recline in a hypothetical posed to the Vocational Expert, the ALJ was not required to do so. An ALJ posing a hypothetical to a VE is not required to include all of a claimant's limitations, but only those which he finds credible. Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."); Sobania v. Sec'y of Health Educ. & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989); Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988). The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (holding that the ALJ need not include additional complaints in the hypothetical not supported by substantial evidence); Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Sobana, 879 F.2d at 445; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). Where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a vocational expert's testimony constitutes substantial evidence supporting the ALJ's decision. Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990). In the matter under consideration, the ALJ posed a hypothetical to the VE which included the restrictions reflected by Plaintiff's RFC, as determined by the ALJ. The VE testified that there was work in sufficient numbers that a person with Plaintiff's RFC could perform. Relying on this testimony, the ALJ found that Plaintiff is not disabled. Tr. 18. See Robson, 526 F.3d at 392; Wingert, 894 F.2d at 298. As such, the court finds that the RFC which the ALJ assigned to Plaintiff is supported by substantial

evidence; that the hypothetical posed to the VE, upon which the ALJ relied, was based on substantial evidence; that neither the ALJ nor the VE were required to consider Plaintiff's alleged need to lie down or recline;[1] that the ALJ's finding that there is work which Plaintiff can perform is supported by substantial evidence; and that the decision of the ALJ that Plaintiff is not disabled is supported by substantial evidence. The court further finds that the ALJ's entire decision is consistent with the case law and the Regulations.

## IV.
## CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence contained in the record as a whole, and that, therefore, the Commissioner's decision should be affirmed.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Complaint and in the Brief in Support of Complaint is **DENIED;** Docs. 1, 12.

**IT IS FURTHER ORDERED** that separate Judgement shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum Opinion.

/s/Mary Ann L. Medler

Dated this 15th day of July, 2010.          MARY ANN L. MEDLER

UNITED STATES MAGISTRATE JUDGE

---

[1]     Plaintiff's counsel posed a hypothetical to the VE which included Plaintiff's alleged limitation of having to recline or lay down a significant part of the day. Tr. 58.